NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

State Board of Education
No. 2019-0397

APPEAL OF RYE SCHOOL DISTRICT
(New Hampshire State Board of Education)

Argued: July 1, 2020
Opinion Issued: December 2, 2020

C.B. and E.B., self-represented parties, by brief, and C.B. orally.

Soule, Leslie, Kidder, Sayward & Loughman, P.L.L.C., of Wolfeboro (Barbara F. Loughman on the brief and orally) for the Rye School District.

Gordon J. MacDonald, attorney general (Laura E. B. Lombardi, senior assistant attorney general, and Jill A. Perlow, senior assistant attorney general, on the brief, and Ms. Lombardi orally), for the New Hampshire State Board of Education.

HICKS, J. The Rye School District (District) appeals a decision of the New Hampshire State Board of Education (State Board) overturning the decision of the Rye School Board (School Board) denying a request by C.B. and E.B. (Parents) to reassign their child (Student) to a school in another district pursuant to RSA 193:3 (2018) (amended 2020). We affirm.

The following background facts are taken from the hearing officer's recommendation to the State Board, which, in turn, largely summarized the presentations of both parties at the hearing. According to the testimony of Student's mother (Mother), Student has a growth hormone deficiency that hinders physical growth and causes Student to fall behind academically and socially. Due to Student's small size, she is often picked up and carried by other pupils. In third grade, Student was pinched and poked by other pupils and was allegedly assaulted by one of them. Parents met with the Rye Elementary School principal, but she declined to file a bullying report. The school responded to this incident and a subsequent incident by promising to keep Student and the other child apart.

Although Mother indicated that fourth grade apparently went relatively well, at the start of fifth grade, Mother requested reassignment of Student, believing that the atmosphere of the middle school program was too much for Student and that Student needed to take things more slowly. She also alleged that the principal did not understand Student's 504 plan and was not aware of Student's attention deficit hyperactivity disorder (ADHD) and anxiety issues. See 29 U.S.C. § 794 (2018) (codifying Section 504 of the Rehabilitation Act of 1973, which prohibits any program receiving federal funds from excluding or discriminating against an "otherwise qualified individual with a disability"). Mother requested an Individual Education Program (IEP) meeting, but the school believed that such a meeting was not necessary because the 504 plan could meet Student's needs. During that academic year, Student was again assaulted by a peer, had issues with anxiety, and was not gaining weight.

Sometime before the end of the 2016-2017 school year, Parents decided to withdraw Student from Rye Elementary School and enroll her in an elementary school in a different town. According to Mother, the new school was following the 504 plan and Student no longer needed help with homework. Student's anxiety decreased and she was gaining weight. In addition, according to Mother, there has been no bullying at Student's new school.

The hearing officer, however, found that there were "continuing issues at the new school after the reassignment took place." The hearing officer also found that Mother had been aware of Rye Elementary School's bullying policy but neither filed a bullying complaint nor addressed the issue with the school superintendent until after Parents had decided to place Student in a different school.

In November 2017, Parents applied to the School Board for reassignment of Student to her new school pursuant to RSA 193:3, I. At that time, the statute provided, in part, that "[a]ny person having custody of a child may apply to the school board for relief if the person thinks the attendance of the child at the school to which such child has been assigned will result in a manifest educational hardship to the child." RSA 193:3, I. Thereafter, the

superintendent informed Parents that the School Board had denied the request. Parents appealed the School Board's decision to the State Board.

After an October 2018 hearing, the hearing officer recommended denial of the appeal, concluding that Parents "failed to demonstrate that attendance at the Rye School had a detrimental or negative effect on the Student" and that "[t]here was no basis for reassignment due to Manifest Educational Hardship." Parents filed an exception to the hearing officer's recommendation with the State Board, which scheduled oral argument on the matter. The State Board voted to accept the hearing officer's report but reject the hearing officer's recommendation, thereby overturning the School Board's decision.

The District moved for a rehearing on a number of grounds, including that the State Board violated its rules by failing to record the hearing before it. Acknowledging that it failed to record its proceedings as required by RSA 541-A:31, VII (2007) and New Hampshire Administrative Rule Ed 212.02(f) (Rule 212.02(f)), the State Board granted the motion for rehearing "for the limited purpose of rehearing oral arguments" and, in light of that decision, declined to address the other grounds in the District's motion at that time. After the rehearing, the State Board issued its final decision, reaffirming its rejection of the hearing officer's recommendation and its decision to overturn the School Board's denial of reassignment.

The District filed an appeal from the administrative agency, see Sup. Ct. R. 10, to this court arguing that the State Board erred by: (1) substituting its judgment for that of the hearing officer on matters of witness credibility; (2) rejecting the hearing officer's findings and reversing the School Board's decision where the State Board's "conclusions are not supported by competent evidence in the record"; (3) denying the District's "request for rehearing after reviewing a partial transcript that omitted most of the testimony of the . . . District's witnesses"; (4) failing to follow its own rules; (5) failing to apply the correct standard for manifest educational hardship; and (6) "violat[ing] RSA 541-A:35 by failing to rule upon each of the . . . District's proposed Findings of Fact." (Bolding omitted.) Before reaching these arguments, however, we consider a preliminary issue raised by the State Board; specifically, the State Board "seeks clarification as to whether a party can appeal, under RSA [chapter] 541, a [State] Board finding of manifest educational hardship under RSA 193:3."

I. Appellate Review

"Appeals from administrative proceedings may be taken under RSA chapter 541 only when so authorized by law." Petition of Hoyt, 143 N.H. 533, 534 (1999) (quotation and brackets omitted); see RSA 541:2 (2007).

We have interpreted this clause to mean that the provisions of chapter 541 do not provide an appeal from the determination of every administrative agency in the state. Unless some reference is made to chapter 541 in any given statute, an appeal under the provisions of chapter 541 is not authorized by law.

Petition of Hoyt, 143 N.H. at 534 (quotation and brackets omitted).

Our decisions have not been uniform as to whether a party seeking review of a State Board decision under RSA 193:3 may appeal under RSA chapter 541 or must obtain a writ of certiorari. In Landaff School District v. State Board of Education, 111 N.H. 317, 318 (1971), we noted that RSA 193:3, as then in force, "ma[de] no provision for appeal from orders of the State board, but on the contrary provide[d]: 'The decision of the state board shall be final and binding.'" Landaff School Dist., 111 N.H. at 318 (quoting RSA 193:3 (Supp. 1970)). Accordingly, we reviewed the State Board's decision under a writ of certiorari. Id. In Appeal of Peirce, 122 N.H. 762, 763 (1982), however, we accepted an appeal of an RSA 193:3 decision under RSA 541:6 without comment. See RSA 541:6 (2007); cf. Swain v. State Bd. of Educ., 116 N.H. 332, 333 (1976) (deciding, without comment, an RSA chapter 541 appeal of a State Board decision declining to make an original assignment of a child to a preschool special education program).

Subsequent to our decisions in Landaff School District and Appeal of Peirce, the legislature enacted RSA 21-N:11, which provides, in part, that the State Board shall "[h]ear appeals and issue decisions, which shall be considered final decisions of the department of education for purposes of RSA 541, of any dispute between individuals and school systems or the department of education, except those disputes governed by the provisions of RSA 21-N:4, III." RSA 21-N:11, III (2020). The State Board expresses doubt as to whether this enactment authorizes this appeal, noting that "[t]he express language of RSA 21-N:11, III does not appear to create a substantive appeal right as it does not state that all Board decisions are subject to appeal under RSA 541." The District, on the other hand, argues that because that section "contains a clear reference to RSA 541," it satisfies the "so authorized by law" requirement of RSA 541:2. More specifically, the District contends that although RSA 193:3 does not refer to RSA chapter 541, the reference to that chapter in RSA 21-N:11 "serves as a catch all reference to authorize appeals to this Court for any final decision of the State Board."

We decline to address these arguments, because we are not writing on a clean slate with respect to this issue. In Appeal of Morrill, 145 N.H. 692, 695 (2001), we declined to address the argument that RSA 21-N:11, III provided a jurisdictional basis for an appeal of the State Board's decision regarding a teacher's suspension under RSA 189:31. See RSA 189:31 (2018). There, we assumed without deciding that the action was properly before the court under

4

RSA chapter 541, "[g]iven the State's apparent acquiescence that the board's decision is appealable under RSA chapter 541." Appeal of Morrill, 145 N.H. at 695. Subsequently, without elaboration, we found jurisdiction under RSA 21-N:11, III for an RSA chapter 541 appeal in Appeal of Farmington School District, 168 N.H. 726, 730 (2016), and Appeal of Dunbarton School District, 169 N.H. 50, 54 (2016). Because the State Board has not asked us to reexamine or overrule Appeal of Farmington School District and Appeal of Dunbarton School District, stare decisis impels us to follow them. See Reid v. N.H. Attorney Gen., 169 N.H. 509, 522 (2016) (declining to reconsider prior precedent when neither party had asked us to do so). Accordingly, we answer the State Board's request for clarification by holding, in accordance with Appeal of Farmington School District and Appeal of Dunbarton School District, that a State Board finding of manifest educational hardship under RSA 193:3 is appealable under RSA chapter 541.

Under RSA 541:13, a party seeking to set aside a decision of the State Board has the burden of demonstrating that the decision "is clearly unreasonable or unlawful." RSA 541:13 (2007). "We will not disturb the [State] Board's decision, except for errors of law, unless we are satisfied, by a clear preponderance of the evidence before us, that it is unjust or unreasonable." Appeal of Dunbarton Sch. Dist., 169 N.H. at 54 (quotation omitted). "The [State] Board's findings of fact are presumed prima facie lawful and reasonable." Id. "We review the [State] Board's rulings on issues of law de novo." Id. Applying this standard of review, we now turn to the District's substantive arguments on appeal.

II. Due Process Violations

The District argues that the State Board violated its due process rights in a number of respects related to the State Board's rejection of the hearing officer's recommendation. For purposes of this appeal, we will assume, without deciding, that the District may bring its due process challenges against the State Board. See Appeal of Town of Bethlehem, 154 N.H. 314, 328 (2006) (citing conflicting case law and assuming, without deciding, that town could raise due process challenge against a state agency). We first address the District's claims under the State Constitution and rely upon federal law only to aid our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

We have held that an administrative agency's rejection or modification of a hearing officer's decision does not violate due process as long as the agency "adequately explains the grounds for its decision as we . . . articulated in" Appeal of Dell. Appeal of Dell, 140 N.H. 484, 495 (1995). In Appeal of Dell, we explained:

> Consistent with an administrative agency's duty to hear and decide all cases over which it has jurisdiction, the general rule is

5

that a hearing officer's decision is merely advisory, and not binding. Although the final decision must be that of the board, the hearing officer's decision is a relevant and important part of the administrative record. While his findings and conclusions are entitled to weight, they may be accepted, rejected, or modified by the board.

We hold, however, that where an administrative agency rejects an advisory decision, it must adequately explain the grounds for such different decision, and fully and particularly set out the agency's decision based upon an independent examination of the record.

Id. at 493 (citations omitted). We also noted that where "the responsibility for hearing the evidence and making factual determinations, including credibility assessments, was delegated by the board to a hearing officer, the board's role is limited to reviewing the record." Id. at 496. Thus, notwithstanding an administrative agency's general authority, as outlined in Appeal of Dell, to reject a hearing officer's findings of fact, the agency's board may not "make factual determinations that depend upon the credibility of the witnesses' statements." Appeal of Hopkinton Sch. Dist., 151 N.H. 478, 482 (2004) (emphasis added). In evaluating opinion evidence contained in the record, however, an agency's board may "properly resolve[] evidentiary conflicts by using its own expertise and technical judgment." Appeal of Dell, 140 N.H. at 496. Furthermore, "before we will evaluate a due process claim, [the party making the claim] must show actual prejudice." Appeal of Omega Entm't, 156 N.H. 282, 287 (2007).

The District first argues that the State Board violated due process when, having delegated fact-finding responsibility to the hearing officer, it then "substituted its judgment for that of the hearing officer on credibility of witnesses." The District contends that there was a "credibility issue in the instant matter" because there was a "dispute as to the facts of the case." The State Board, on the other hand, argues that this case did not turn on witness credibility. It asserts:

The witnesses' testimony essentially summarized the factual information documented in the records and provided opinions as to whether attendance at the Rye School had a detrimental or negative effect on Student. . . . [T]he evidentiary hearing did not involve conflicting testimony between witnesses about events, and neither the Hearing Officer nor the [State] Board made findings regarding the credibility of witnesses in reaching their decisions.

We have reviewed the record and, although, as discussed below, the transcript of the October 2018 hearing contains numerous omissions and is

difficult to follow, we agree with the State Board's characterization. We conclude, based on the record as a whole, including the transcript of the State Board members' deliberative discussions, that the State Board did not make factual determinations that depended upon the credibility of witnesses' statements. Indeed, as one board member explained, "while the transcript put some voices to the record, . . . the voices supported the record that we have been provided with[,] which were extensive exhibits."

The District next argues that the State Board "violated [the District's] due process rights by rejecting the hearing officer's fact findings without grounds or an adequate explanation for rejecting those fact findings," and that the State Board "did not adequately explain the grounds for its rejection of the hearing officer's recommendation." We disagree.

With respect to its rejection of the hearing officer's recommendation, the State Board stated its reasoning in its initial order as follows:

> The State Board accepted the Hearing Officer's finding that the Rye School District offered accommodations to address the parent's concerns, but disagreed that those accommodations were sufficient to meet the student's unique educational and social needs. The record showed that the district's ongoing attempts to fit the student into the school's program did not alleviate the many problems faced by the student. As reflected in the record, the student's issues were satisfactorily addressed only when the student was placed in another school.

In its order after rehearing, the State Board elaborated further:

> The record reflects that all three of th[e] criteria [of the Rye School Board's manifest educational hardship policy] were met in this case. The student had an unusual and extraordinary combination of physical, social, and academic challenges that made her school assignment detrimental to her. The record showed that the student's assignment aggravated her anxiety for a number of reasons, including ongoing bullying that was never adequately resolved, and the stress of trying to navigate a school structure for which she was not developmentally ready. The school offered accommodations [which] were designed to fit the student into an educational environment to which her developmental delays and anxiety made her ill-suited. The failure of those accommodations only increased the student's anxiety. The record shows that placing the student in a different educational environment resolved or alleviated the issues that prompted the parents to pursue the new placement.

7

We conclude that these explanations are adequate under the standard in Appeal of Dell.  See Appeal of Dell, 140 N.H. at 493.

To the extent the District asserts that the State Board rejected the hearing officer's factual findings, we disagree.  The State Board "accept[ed] the Hearing Officer's Report and den[ied] the Hearing Officer's Recommendation[]." We interpret this decision as accepting the hearing officer's factual findings but disagreeing with the hearing officer's interpretation of those facts and his ultimate conclusions based thereon.  See Guy v. Town of Temple, 157 N.H. 642, 649 (2008) ("[T]he interpretation of a tribunal's order presents a question of law, which we review de novo."); cf. Appeal of Farmington Sch. Dist., 168 N.H. at 731 (explaining that the State Board's conclusion, contrary to that reached by the local board, as to whether employee had been insubordinate, "was not a de novo factual determination," but "[r]ather, the state board accepted the local board's account of what [employee] did[,] . . . but found clearly erroneous the local board's conclusion that [employee's] actions were inconsistent with district policy").

The District argues that the State Board's conclusions "directly contradict[]" a number of specific findings of fact made by the hearing officer. Again, however, any points of disagreement were not as to the underlying facts, but, rather, were to the ultimate conclusions as to whether Student's circumstances were unique and whether attendance at Rye Elementary School had a negative or detrimental effect on Student.  Cf. Appeal of Farmington Sch. Dist., 168 N.H. at 731.  As one State Board member stated:

> It seemed to me that . . . accommodations were made repeatedly but [the] factual record I think pretty clearly indicates that those accommodations were not satisfactory.  And that, to me, is really the crux of this issue . . . - - not whether accommodations were made, which is what I think the Hearing Officer was focusing on, on listing the facts, but whether those accommodations were successful in resolving the . . . issues in this case.  To me, the record remains pretty clear that, despite the numerous accommodations offered, they didn't succeed in creating the kind of educational environment that this child needed.

To the extent the District contends that the conclusions reached by the State Board were not supported by competent evidence in the record, we disagree.  The record contains extensive documentary evidence of Student's "physical, social and academic challenges," including her growth hormone deficiency and resulting small stature, ADHD, and anxiety.  It also contains records of the District's interventions, Parent's continued complaints, Student's continued anxiety, and Student's progress at the out-of-district school.  We cannot conclude that the State Board's conclusions are not supported by the record.

8

The District next argues that the State Board "deprived [it] of due process by relying on the incomplete and inaccurate record in making its final decision." According to the District, the transcript of the October 2018 hearing before the hearing officer omitted testimony of the District's two witnesses.

To prevail on its due process claim, the District must show that the deficiencies in the October 2018 hearing transcript so hindered the State Board's ability to provide meaningful review that actual prejudice to the District resulted. Cf. State v. Marshall, 162 N.H. 657, 672 (2011) (noting, in criminal context, that "in order to obtain a new trial, a defendant must show specific prejudice to his appeal resulting from the incompleteness of the record" (quotation omitted)); Oroh v. Holder, 561 F.3d 62, 65 (1st Cir. 2009) (noting, in immigration context, that "to succeed on a claim of inadequate transcription, [the petitioner] must show specific prejudice to his ability to perfect an appeal sufficient to rise to the level of a due process violation," or, "[m]ore specifically, he must show at a bare minimum that the gaps relate to matters material to his case and that they materially affect his ability to obtain meaningful review" (quotations and citations omitted)).

We conclude that the District has failed to show actual prejudice. The witnesses whose testimony the District claims was missing from the transcript or inaccurately transcribed were its own witnesses. "The law is pellucid that if a missing transcript reasonably could be recreated by the complaining party, its absence is not prejudicial." Oroh, 561 F.3d at 66 (finding no prejudice where "all of the missing information came during testimony from Oroh himself, or were comments by his attorney" and, therefore, was "readily available to Oroh, yet was never provided—by affidavit or otherwise—to the [Board of Immigration Appeals] or th[e] court"). The District submitted to the State Board the affidavit of a participant at the October 2018 hearing detailing the testimony of both of the District's witnesses. To the extent the District contended at oral argument that the affidavit was insufficient, it has not demonstrated that it was unable to file a more comprehensive one. Under these circumstances, we conclude that the deficiencies in the transcript were not prejudicial. Id.

We conclude that the District has failed to demonstrate a violation of due process under the State Constitution. The Federal Constitution offers the District no greater protection than does the State Constitution under these circumstances. See Appeal of Dell, 140 N.H. at 493; Cousin v. Office of Thrift Supervision, 73 F.3d 1242, 1244, 1250 (2d Cir. 1996) (concluding that Acting Director of the Office of Thrift Supervision's "absolute discretion to accept or reject the [Administrative Law Judge's] recommended findings of fact and rulings of law when arriving at his Final Order" does not violate due process); Appeal of Omega Entm't, 156 N.H. at 287; Oroh v. Holder, 561 F.3d at 65-66. Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

### III. Violation of Rule 212.02(b)

The District contends that the State Board erred by failing to follow Rule 212.02(b), which grants parties the right to a 10-minute oral argument on the record before the State Board.  See N.H. Admin. R., Ed 212.02(b).  It argues:

> Instead of following its rules, the [S]tate [B]oard swore in one of Student's parents as a witness and conducted a two-hour hearing, during which it allowed the parent to testify, making a number of statements and claims that were not in the record or were contradicted by the record and findings of fact of the hearing officer.

The District also asserts that it had no opportunity to cross-examine the parent and that the State Board failed to record the hearing.

We note that in response to the District's motion for rehearing, the State Board acknowledged that it failed to record the January 10 hearing and granted the District's motion for rehearing "for the limited purpose of rehearing oral arguments."  The District does not explain how the rehearing failed to cure any deficiencies in the original hearing or how the alleged errors in the prior hearing tainted the State Board's decision on rehearing.  The District does not contend that, despite rehearing oral arguments, the State Board impermissibly relied upon the prior hearing before it.  Accordingly, the District has not shown that it is entitled to appellate relief.  See Giles v. Giles, 136 N.H. 540, 545 (1992) ("For an error to require reversal on appeal, it must have been prejudicial to the party claiming it." (quotation and brackets omitted)).  Furthermore, to the extent the District challenges the lack of an opportunity to cross-examine Parents, we conclude that this claim is not preserved.  As Parents point out, and the District's counsel conceded at oral argument, the District did not request to conduct cross-examination at the hearing.  See State v. Porter, 144 N.H. 96, 100–01 (1999) (concluding defendant's claim that "the trial court erred in precluding him from cross-examining the victim" was not preserved where "defendant did not object to the trial court's ruling, but rather acquiesced to it").

### IV. Manifest Educational Hardship

The District next argues that the State Board erred by failing to "apply the correct standard for Manifest Educational Hardship and improperly rul[ing] that Manifest Educational Hardship existed."  We accept, for purposes of this appeal, the District's contention that because the State Board's policy had expired, the only applicable policy at the time of the School Board's hearing was "the District's local board policy," which required Parents "to prove the existence of unusual and extraordinary circumstances and the detrimental

10

or negative effect of the current placement on" Student. We disagree that the State Board failed to apply that standard.

The State Board specifically concluded that Student "had an unusual and extraordinary combination of physical, social, and academic challenges" and that Student's placement at Rye Elementary School had a detrimental effect on her. The State Board accepted that the school had offered Student accommodations, but concluded that they were insufficient to meet her unique needs. The State Board further concluded that placement in the new school "satisfactorily addressed" Student's issues and either "resolved or alleviated the issues that prompted the parents to pursue the new placement."

V. <u>Violation of RSA 541-A:35</u>

Finally, the District argues that the State Board violated RSA 541-A:35 by failing to rule on each of the District's proposed findings of fact. <u>See</u> RSA 541-A:35 (2007) (providing, in pertinent part, that "[i]f, in accordance with agency rules, a party submitted proposed findings of fact, the decision shall include a ruling upon each proposed finding"). We disagree.

The District received rulings by the hearing officer on each of its proposed findings and, as we previously noted, the State Board accepted those findings. Nothing in RSA 541-A:35 requires the State Board to go through the redundant task of separately ruling on requested findings on which the hearing officer has already ruled. The purpose of an agency's statutory obligation to state the factual findings supporting its conclusion is "to provide this court with an adequate basis upon which to review the [the agency's] decision." <u>Petition of Support Enforcement Officers</u>, 147 N.H. 1, 9 (2001). Because we conclude that the State Board's decision includes findings of fact and conclusions of law sufficient to permit appellate review, it satisfies the requirements of RSA 541-A:35. <u>See</u> <u>Appeal of Malo</u>, 169 N.H. 661, 669 (2017).

In sum, the District has failed to show that the State Board's decision "is clearly unreasonable or unlawful." RSA 541:13. Accordingly, we affirm.

<u>Affirmed</u>.

BASSETT, HANTZ MARCONI, and DONOVAN, JJ., concurred.